1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

LADALE FENTRESS,

                              Plaintiff,

        v.

CAROLYN W. COLVIN, Acting
Commissioner of Social Security,

                              Defendant.

Case No. 3:13-cv-05078-KLS

ORDER AFFIRMING DEFENDANT'S
DECISION TO DENY BENEFITS

        Plaintiff has brought this matter for judicial review of defendant's denial of her

application for supplemental security income ("SSI") benefits.  Pursuant to 28 U.S.C. § 636(c),

Federal Rule of Civil Procedure 73 and Local Rule MJR 13, the parties have consented to have

this matter heard by the undersigned Magistrate Judge.  After reviewing the parties' briefs and

the remaining record, the Court hereby finds that for the reasons set forth below defendant's

decision to deny benefits should be affirmed.

                        FACTUAL AND PROCEDURAL HISTORY

        On July 22, 2010, plaintiff filed an application for SSI benefits, alleging disability as of

December 22, 2008. See ECF #14, Administrative Record ("AR") 21.  That application was

denied upon initial administrative review on November 8, 2010, and on reconsideration on

February 1, 2011. See id.  A hearing was held before an administrative law judge ("ALJ") on

September 22, 2011, at which plaintiff, represented by counsel, appeared and testified, as did a

vocational expert. See AR 38-94.

ORDER - 1

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

In a decision dated October 27, 2011, the ALJ determined plaintiff to be not disabled. <u>See</u> AR 21-30.  Plaintiff's request for review of the ALJ's decision was denied by the Appeals Council on November 30, 2012, making the ALJ's decision the final decision of the Commissioner of Social Security (the "Commissioner"). <u>See</u> AR 1; 20 C.F.R. § 416.1481.  On February 25, 2013, plaintiff filed a complaint in this Court seeking judicial review of the Commissioner's final decision. <u>See</u> ECF #4.  The administrative record was filed with the Court on May 28, 2013. <u>See</u> ECF #14.  The parties have completed their briefing, and thus this matter is now ripe for the Court's review.

Plaintiff argues the ALJ's decision should be reversed and remanded for an award of benefits, or in the alternative for further administrative proceedings, because the ALJ erred: (1) in rejecting the opinions of Linda McNellis, M.S.W., Dee Ann Charles, M.A., and Nakisha Rymer, M.S.; (2) in giving significant weight to the opinion of Jerry Gardner, Ph.D.; and (3) in discounting plaintiff's credibility.  For the reasons set forth below, however, the Court disagrees that the ALJ erred as alleged, and therefore finds defendant's decision to deny benefits should be affirmed.

<u>DISCUSSION</u>

The determination of the Commissioner that a claimant is not disabled must be upheld by the Court, if the "proper legal standards" have been applied by the Commissioner, and the "substantial evidence in the record as a whole supports" that determination. <u>Hoffman v. Heckler</u>, 785 F.2d 1423, 1425 (9th Cir. 1986); <u>see</u> <u>also</u> <u>Batson v. Commissioner of Social Security Admin.</u>, 359 F.3d 1190, 1193 (9th Cir. 2004); <u>Carr v. Sullivan</u>, 772 F.Supp. 522, 525 (E.D. Wash. 1991) ("A decision supported by substantial evidence will, nevertheless, be set aside if the proper legal standards were not applied in weighing the evidence and making the decision.")

ORDER - 2

(citing <u>Brawner v. Secretary of Health and Human Services</u>, 839 F.2d 432, 433 (9th Cir. 1987)).

Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." <u>Richardson v. Perales</u>, 402 U.S. 389, 401 (1971) (citation omitted); <u>see</u> <u>also</u> <u>Batson</u>, 359 F.3d at 1193 ("[T]he Commissioner's findings are upheld if supported by inferences reasonably drawn from the record.").  "The substantial evidence test requires that the reviewing court determine" whether the Commissioner's decision is "supported by more than a scintilla of evidence, although less than a preponderance of the evidence is required." <u>Sorenson v. Weinberger</u>, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975).  "If the evidence admits of more than one rational interpretation," the Commissioner's decision must be upheld. <u>Allen v. Heckler</u>, 749 F.2d 577, 579 (9th Cir. 1984) ("Where there is conflicting evidence sufficient to support either outcome, we must affirm the decision actually made.") (quoting <u>Rhinehart v. Finch</u>, 438 F.2d 920, 921 (9th Cir. 1971)). [1]

I.      The ALJ's Evaluation of the Opinion Evidence in the Record

The ALJ is responsible for determining credibility and resolving ambiguities and conflicts in the medical evidence. <u>See</u> <u>Reddick v. Chater</u>, 157 F.3d 715, 722 (9th Cir. 1998).  Where the medical evidence in the record is not conclusive, "questions of credibility and resolution of conflicts" are solely the functions of the ALJ. <u>Sample v. Schweiker</u>, 694 F.2d 639, 642 (9th Cir. 1982).  In such cases, "the ALJ's conclusion must be upheld." <u>Morgan v.</u>

---

[1] As the Ninth Circuit has further explained:

> . . . It is immaterial that the evidence in a case would permit a different conclusion than that which the [Commissioner] reached.  If the [Commissioner]'s findings are supported by substantial evidence, the courts are required to accept them.  It is the function of the [Commissioner], and not the court's to resolve conflicts in the evidence.  While the court may not try the case de novo, neither may it abdicate its traditional function of review.  It must scrutinize the record as a whole to determine whether the [Commissioner]'s conclusions are rational.  If they are . . . they must be upheld.

<u>Sorenson</u>, 514 F.2d at 1119 n.10.

ORDER - 3

Commissioner of the Social Sec. Admin., 169 F.3d 595, 601 (9th Cir. 1999).  Determining

whether inconsistencies in the medical evidence "are material (or are in fact inconsistencies at

all) and whether certain factors are relevant to discount" the opinions of medical experts "falls

within this responsibility." Id. at 603.

In resolving questions of credibility and conflicts in the evidence, an ALJ's findings

"must be supported by specific, cogent reasons." Reddick, 157 F.3d at 725.  The ALJ can do this

"by setting out a detailed and thorough summary of the facts and conflicting clinical evidence,

stating his interpretation thereof, and making findings." Id.  The ALJ also may draw inferences

"logically flowing from the evidence." Sample, 694 F.2d at 642.  Further, the Court itself may

draw "specific and legitimate inferences from the ALJ's opinion." Magallanes v. Bowen, 881

F.2d 747, 755, (9th Cir. 1989).

The ALJ must provide "clear and convincing" reasons for rejecting the uncontradicted

opinion of either a treating or examining physician. Lester v. Chater, 81 F.3d 821, 830 (9th Cir.

1996).  Even when a treating or examining physician's opinion is contradicted, that opinion "can

only be rejected for specific and legitimate reasons that are supported by substantial evidence in

the record." Id. at 830-31.  However, the ALJ "need not discuss *all* evidence presented" to him

or her. Vincent on Behalf of Vincent v. Heckler, 739 F.3d 1393, 1394-95 (9th Cir. 1984)

(citation omitted) (emphasis in original).  The ALJ must only explain why "significant probative

evidence has been rejected." Id.; see also Cotter v. Harris, 642 F.2d 700, 706-07 (3rd Cir. 1981);

Garfield v. Schweiker, 732 F.2d 605, 610 (7th Cir. 1984).

In general, more weight is given to a treating physician's opinion than to the opinions of

those who do not treat the claimant. See Lester, 81 F.3d at 830.  On the other hand, an ALJ need

not accept the opinion of a treating physician, "if that opinion is brief, conclusory, and

ORDER - 4

inadequately supported by clinical findings" or "by the record as a whole." <u>Thomas v. Barnhart</u>,

278 F.3d 947, 957 (9th Cir. 2002); <u>Batson v. Commissioner of Social Sec. Admin.</u>, 359 F.3d

1190, 1195 (9th Cir. 2004); <u>see</u> <u>also</u> <u>Tonapetyan v. Halter</u>, 242 F.3d 1144, 1149 (9th Cir. 2001);

<u>Matney on Behalf of Matney v. Sullivan</u>, 981 F.2d 1016, 1019 (9th Cir. 1992).  An examining

physician's opinion is "entitled to greater weight than the opinion of a nonexamining physician."

<u>Lester</u>, 81 F.3d at 830-31.  A non-examining physician's opinion may constitute substantial

evidence if "it is consistent with other independent evidence in the record." <u>Id.</u> at 830-31;

<u>Tonapetyan</u>, 242 F.3d at 1149.

Plaintiff takes issue with the ALJ's following findings:

. . . I give significant weight to the opinion of Jerry Gardner, Ph.D., regarding
the claimant's functional limitations (B6F/11, B7F).  Dr. Gardner conducted a
comprehensive review of the medical evidence and his opinion regarding the
severity of the claimant's mental impairments – that she is mildly restricted in
her activities of daily living, moderately impaired with respect to her social
functioning, and moderately impaired in maintaining concentration,
persistence, and/or pace – is consistent with my findings and with the record
as a whole.  He noted that the claimant is capable of carrying out simple tasks
with appropriate limitations such as working away from crowds and having
only superficial contact with the public and co-workers (B7F/3).  Dr. Gardner
also noted that the claimant could respond appropriately to simple changes in
the workplace (B7F/3).

. . .

Linda L. McNeills, MSW, evaluated the claimant on November 16, 2009, and
opined that the claimant was markedly and severely impacted by her mental
impairments (B18F).  I give this opinion little weight because the evaluation is
inconsistent with the record as a whole, and there is no objective medical
evidence to support the opinion.  Furthermore, Ms. McNeills is not an
acceptable medical source.

Likewise, I give little weight to the opinion of Dee Ann Charles, M.A., one of
the claimant's therapists, who performed a psychological evaluation of the
claimant on December 20, 2010 (B20F).  Although Ms. Charles reviewed the
claimant's records as part of her evaluation, those records are based almost
entirely on the claimant's subjective reports, which are unreliable.
Furthermore, the record as a whole does not support her opinion that the

ORDER - 5

claimant is markedly and severely impacted by her mental impairments. Furthermore, Ms. Charles is not an acceptable medical source.

I also give little weight to the opinion of Nakisha Rymer, M.S., who evaluated the claimant on September 6, 2011 (B15F). She opined that the claimant is generally unable to meet competitive standards and generally has no useful ability to function, yet also noted that the claimant only has mild difficulties with memory and concentration (B15F/1, B15F/3). Ms. Rymer also noted the claimant's behavior, appearance and speech were all within normal limits (B15F/1), yet indicated that the claimant's ability to adhere to basic standards of neatness and cleanliness were "seriously limited, but not precluded" (B15F/4). Not only is the evaluation internally inconsistent, it is inconsistent with the record as a whole. Dr. Gardner, for example, noted that the claimant showed normal behavior on examinations and an ability to function despite her mental impairments (B6F/13), however, Ms. Rymer's check-list of the claimant's signs and symptoms reflect a severity that does not appear elsewhere in the record (B15F/2). Furthermore, Ms. Rymer offered at one point to serve as an advocate for the claimant, which calls her objectivity into question. Furthermore, Ms. Rymer is not an acceptable medical source.

AR 27-28. Plaintiff first argues it was improper for the ALJ to reject the opinions of the above sources on the basis that they are not acceptable medical sources. But an ALJ may give less weight to a non-medical source's opinion than to the opinion of an acceptable medical source, such as Dr. Gardner. See Gomez v. Chater, 74 F.3d 967, 970-71 (9th Cir. 1996); 20 C.F.R. § 416.913(a), (d) (licensed physicians and licensed or certified psychologists are "acceptable medical sources"). Further, it is not at all clear that the standards set forth in Social Security Ruling ("SSR") 06-03p, 2006 WL 2329939, apply to Ms. McNeills, Ms. Charles and Ms. Rymer, as both parties appear to be agree that as "social welfare agency personnel," they are "other sources" – as opposed to "other medical sources"[2] – whose opinions the ALJ "may expressly

---

[2] In regard to "other medical sources," SSR 06-03p provides in relevant part that opinions from such sources are considered "important and should be evaluated on key issues such as impairment severity and functional effects, along with the other relevant evidence in the" record," and that although "[t]he fact that a medical opinion is from an 'acceptable medical source' is a factor that may justify giving that opinion greater weight than an opinion from a medical source who is not an 'acceptable medical source' because . . . 'acceptable medical sources' 'are the most qualified health care professionals,' . . . depending on the particular facts in a case, . . . an opinion from a medical source who is not an 'acceptable medical source' may outweigh the opinion of an 'acceptable medical source,' including the medical opinion of a treating source." Id. at *3, *5.

ORDER - 6

disregard" if she gives "germane reasons" for doing so. <u>Turner v. Commissioner of Social Security</u>, 613 F.3d 1217, 1223-24 (9th Cir. 2010) (quoting <u>Lewis v. Apfel</u>, 236 F.3d 503, 511 (9th Cir. 2011); 20 C.F.R. § 404.1513(d)(3)).

Regardless of whether the standards of SSR 06-03p apply to these sources, as explained below the ALJ not only provided germane reasons for rejecting their opinions, but specific and legitimate ones as well.[3]  Although plaintiff asserts their opinions are all supported by the mental health treatment notes in the record – including those of both Ms. McNeills and Ms. Charles – that evidence, as the ALJ found, contain little if any objective clinical support for the level of functional restriction they assessed. <u>See</u> AR 321, 327, 332, 339, 347, 350, 359, 362, 365, 369-70, 373-76, 427-34, 494, 527, 529, 584-607, 609-10, 619-32, 656, 658, 660, 662, 664-66, 668, 670-73, 676-97, 700-01, 727; <u>Batson</u>, 359 F.3d at 1195; <u>see also</u> <u>Bayliss v. Barnhart</u>, 427 F.3d 1211, 1216 (9th Cir. 2005) (discrepancies between opinion source's functional assessment and that source's clinical notes, recorded observations and other comments regarding capabilities is valid reason for not relying on that assessment); <u>Weetman v. Sullivan</u>, 877 F.2d 20, 23 (9th Cir. 1989).

The same is true in regard to the evaluation reports from those sources themselves. <u>See</u> AR 650-55, 716-25, 736-43.  In addition, because of that lack of objective clinical support in the Ms. Charles's own session notes and evaluation reports – and because, as discussed in greater detail below, the Court finds no error in the discounting of plaintiff's credibility in this case – the ALJ was not remiss in rejecting the opinion of Ms. Charles because she appeared to rely almost entirely on plaintiff's subjective self-reports. <u>See</u> <u>Morgan</u>, 169 F.3d at 601 (physician's opinion premised to large extent on claimant's own accounts of her symptoms and limitations may be

---

[3] Plaintiff asserts there is an absence of opinion in the record contradicting those Ms. McNeills, Ms. Charles and Ms. Rymer provided, but that offered by Dr. Charles clearly constitutes such.

ORDER - 7

disregarded where those complaints have been properly discounted).[4]  So too did the ALJ not err in rejecting the opinion of Ms. Rymer in part because at one point she offered to serve as an advocate for plaintiff, as that does call into question her objectivity.  While plaintiff offers an alternative interpretation of that offer, the ALJ's is at least equally reasonable and therefore must be adopted by the Court.  See Allen, 749 F.2d at 579.

Lastly, plaintiff finds fault with the ALJ's reliance on the opinion of Dr. Gardner, arguing he did not review any of the above functional assessments.  But even if that is so, the Court finds no error in the ALJ's reliance on Dr. Gardner's opinions, given that as discussed above the ALJ gave valid reasons for rejecting those assessments at least in part because the treatment notes in the record fail to provide objective clinical support therefor.  For the same reason, the ALJ did not err in finding the opinion of Dr. Gardner to be consistent with the evidence in the record as a whole or in giving greater weight to that opinion.

II.     The ALJ's Assessment of Plaintiff's Credibility

Questions of credibility are solely within the control of the ALJ.  See Sample, 694 F.2d at 642.  The Court should not "second-guess" this credibility determination.  Allen, 749 F.2d at 580.  In addition, the Court may not reverse a credibility determination where that determination is based on contradictory or ambiguous evidence.  See id. at 579.  That some of the reasons for discrediting a claimant's testimony should properly be discounted does not render the ALJ's determination invalid, as long as that determination is supported by substantial evidence.  Tonapetyan , 242 F.3d at 1148.

---

[4] It is true as noted by plaintiff that in Ryan v. Commissioner of Social Security, 528 F.3d 1194 (9th Cir. 2008), the Ninth Circuit stated that "an ALJ does not provide clear and convincing reasons for rejecting an examining physician's opinion by questioning the credibility of the [claimant's] complaints where the [examining physician] does not discredit those complaints and supports his [or her] ultimate opinion with his [or her] own observations." Id. at 1199-1200.  The Ninth Circuit, however, went on to note that there was "nothing in the record to suggest" the examining physician in that case relied on the claimant's own "description of her symptoms . . . more heavily than his own clinical observations." Id. at 1200.  Such is not the case here as discussed above.

ORDER - 8

To reject a claimant's subjective complaints, the ALJ must provide "specific, cogent reasons for the disbelief." Lester, 81 F.3d at 834 (citation omitted).  The ALJ "must identify what testimony is not credible and what evidence undermines the claimant's complaints." Id.; see also Dodrill v. Shalala, 12 F.3d 915, 918 (9th Cir. 1993).  Unless affirmative evidence shows the claimant is malingering, the ALJ's reasons for rejecting the claimant's testimony must be "clear and convincing." Lester, 81 F.2d at 834.  The evidence as a whole must support a finding of malingering. See O'Donnell v. Barnhart, 318 F.3d 811, 818 (8th Cir. 2003).

In determining a claimant's credibility, the ALJ may consider "ordinary techniques of credibility evaluation," such as reputation for lying, prior inconsistent statements concerning symptoms, and other testimony that "appears less than candid." Smolen v. Chater, 80 F.3d 1273, 1284 (9th Cir. 1996).  The ALJ also may consider a claimant's work record and observations of physicians and other third parties regarding the nature, onset, duration, and frequency of symptoms. See id.

The ALJ discounted plaintiff's credibility in part because the medical evidence in the record did not reflect the severity of the mental and physical symptoms and limitations she was alleging. See AR 26.  A determination that a claimant's subjective complaints are inconsistent with objective clinical findings can satisfy the clear and convincing requirement. Regennitter v. Commissioner of SSA, 166 F.3d 1294, 1297 (9th Cir. 1998).  Plaintiff does not assert fault, nor does the Court find any, in regard the ALJ's evaluation of the objective medical evidence in the record concerning her physical impairments and, as discussed above, the ALJ did not err with respect to her evaluation of the objective medical evidence concerning plaintiff's alleged mental health symptoms and limitations.  The Court does find, therefore, that this was a valid basis for discounting her credibility.

ORDER - 9

1    The ALJ also discounted plaintiff's credibility because her "description of the symptoms

2  and limitations of her impairments has generally been inconsistent and unpersuasive." AR 26.

3  For example, the ALJ noted that:

> The claimant testified that she lives with her adult son and daughter, as well as
> her 3-year-old grandson.  She testified that her children are independent and
> that she plays with her grandson when her daughter is present.  However, the
> record reflects that the claimant complained repeatedly to her mental health
> counselor about doing everything for her children (both of whom have mental
> impairments/illnesses) and being responsible for babysitting her grandson all
> the time (B10F).  In a session on October 12, 2010, the claimant reported
> making an effort to be less involved in her children's lives all the time and
> was "actively telling her daughter that she will not babysat [sic] her grandson
> all the time and not have a life of her own" (B10F/20).  On September 1,
> 2010, she presented as angry, overwhelmed, and frustrated, and vented her
> frustrations of having to help so many other people in her life (B10F/29).  In a
> session on August 25, 2010, she admitted that her relationship with her
> children is "enmeshed" (B10F/25).  She told therapist Dee Ann Charles that
> "she does a lot for her adult son and daughter who both have mental illnesses"
> and they both depend on her for transportation and other assistance (B16F/54).
> I find that the claimant minimized in her testimony the extent of her care for
> her children and grandchild, and that the claimant's testimony is therefore not
> credible.

16  AR 26-27.  A claimant's reported daily activities can form the basis for an adverse credibility

17  determination, if they consist of activities "that are transferable to a work setting" or that

18  otherwise contradict the claimant's "other testimony." Orn v. Astrue, 495 F.3d 625, 639 (9th Cir.

19  2007); Smolen, 80 F.3d at 1284 and n.7.  Here, plaintiff's reports do both.  As the ALJ pointed

20  out, they not only contradict her hearing testimony, but indicate she provided care and assistance

21  for her children and grandchild at a level and to an extent that could be deemed transferrable to a

22  work setting.  Again, as with her argument concerning Ms. Rymer's functional assessment, while

23  plaintiff offers an alternative explanation for the above inconsistencies, the ALJ's interpretation

24  thereof is at least equally valid. See Allen, 749 F.2d at 579.

25    The same is true regarding the other inconsistencies in plaintiff's allegations the ALJ

ORDER - 10

noted:

> The record reflects that the claimant has alleged that her mental impairments cause her to lose sleep because of nightmares and racing thoughts.  However, it also shows that her own behaviors contribute to her losing sleep.  In a mental health progress note dated October 25, 2010, the claimant reported that she had been out with her boyfriend "just about every night for the past few months and not getting in until 12:00 a.m. . . ." (B10/F16).  Furthermore, she also told one of her mental health counselors that she learned "she might not be sleeping because she stopped using her CPAP machine after her [gastric] bypass surgery and never consulted with the sleep clinic to determine if she might still need to use it" (B15F/1).

> The record is full of other inconsistencies.  For example, the claimant reported that crowds and even small gatherings make her anxious (B1E/6), but indicated elsewhere that she has talents as a karaoke DJ and "would like to use this as a way to earn money when she needs to move out" (B16F/1).  At [the] hearing, she denied spending time with friends, but reported in a therapy session that she was spending as much time as she could with a friend to get away from the "chaos" at home (B10F/22).  The claimant testified at [the] hearing that she only rarely uses alcohol and denied in her medical records any current alcohol or substance abuse, or any history of substance abuse (B19/2, B14F/3).  However, her mental health records also reflect the claimant's use of hard alcohol and beer roughly once a week, and methamphetamine and marijuana use in the past (B10F/22).  At [the] hearing, the claimant testified the only time she has been arrested was in 2008 on a marijuana charge that was later dropped after she obtained a drug and alcohol assessment, however the record reflects that the claimant was arrested in November 2010 on a DUI charge (B10F/12, B10F/2).

> The claimant's reports regarding the severity of her syncope/pre-syncope are also inconsistent.  For example, she reported to Yo Kondo, M.D., on September 14, 2009, that she had 20 syncopal episodes in the previous six months, and that she passed out for approximately 3 to 5 minutes and was not able to function for one to two days after the episodes (B3F/7).  In a psychiatrist note, Anna Ratzliff, M.D., noted the claimant's report of heart problems that cause her to begin to pass out, with roughly 20 episodes since April 2008 (B19F/2).  At [the] hearing, the claimant testified the episodes occur at least three times a week and last for an hour and a half to two hours.  Other than the claimant's subjective complaints, there is no objective evidence of syncope or pre-syncope in the record.  The claimant has received no treatment for this condition.  The fact that the claimant continues to drive does not support the allegation of a severely limiting seizure condition. . . .

AR 27.  In addition to offering her own alternative interpretation of the above inconsistencies as

ORDER - 11

she did in regard to the issue of the care she provided to her children and grandchildren, plaintiff

argues "[t]he record does not support a finding that the behaviors the ALJ referenced [concerning

her staying out until midnight] continued beyond an isolated period of time." ECF #17, p. 11.

But clearly the fact that this behavior – which, as plaintiff herself reported she engaged in "just

about every night for" at least a few months (AR 27), and which clearly could be a cause of her

loss of sleep – occurred well within the period of time during which she claims to have been

disabled at least in part due to mental health issues resulting in such sleep problems.  That,

combined with plaintiff's additional admission that she also might not be sleeping because she

stopped using her CPAP machine, provided the ALJ with a reasonable basis for finding her to be

not fully credible as to why she herself alleged she had lost sleep, even if that stated basis did not

entirely explain why her nightmares happened in the first place.[5]

To combat the ALJ's reliance on her apparent desire to earn money as a karaoke DJ for

which she reported having talents, plaintiff argues this ignores her testimony that she "also tried

working at the fair in 2009." ECF #17, p. 12 (citing Lingenfelter v. Astrue, 504 F.3d 1028, 1038

(9th Cir. 2007) (stating mere "fact that a claimant tried to work for a short period of time and,

because of his impairments, *failed*," does not mean "that he did not then experience pain and

limitations severe enough to preclude him from *maintaining* substantial gainful employment")).

But the ALJ did not use plaintiff's self-report here to show she had successfully attempted to

return to work, but rather to point out its inconsistency with her allegation that "crowds and even

small gatherings make her anxious." AR 27.

Plaintiff also argues there is no evidentiary support in the record for the ALJ's assertion

---

[5] Plaintiff further argues the ALJ "did not explain what allegations or reported symptoms were undermined by any inconsistency related to her sleep disturbance" (ECF #17, p. 11), but it does call into question the extent to which her alleged disabling impairments impacted her ability to function, and, as noted above, the ALJ may consider "ordinary techniques of credibility evaluation" generally in assessing a claimant's credibility. Smolen, 80 F.3d at 1284.

that her testimony that her only arrest was for marijuana possession in 2008, was not consistent with the DUI she received in 2010, as her description thereof "suggests she was given a citation, instead." ECF #17, p. 12.  But the record clearly shows she reported "facing a DUI *charge*." AR 585 (emphasis added).  As such, it was reasonable for the ALJ to assume plaintiff was arrested when she received the DUI.[6]  In addition, the ALJ as noted above pointed to other inconsistent statements in the record, which plaintiff has not specifically challenged.[7]  For all of the above reasons, therefore, the ALJ properly found her to be not fully credible.

<u>CONCLUSION</u>

Based on the foregoing discussion, the Court hereby finds the ALJ properly concluded plaintiff was not disabled.  Accordingly, defendant's decision to deny benefits is AFFIRMED.

DATED this 20th day of March, 2014.

Karen L. Strombom
United States Magistrate Judge

---

[6] Again, even if plaintiff's interpretation of the evidence in the record here is reasonable, so too is the ALJ's and thus hers rather than plaintiff's must be adopted. <u>See</u> <u>Allen</u>, 749 F.2d at 579.

[7] Plaintiff does argue that even if the ALJ's description of her reports concerning alcohol use as being inconsistent is accurate, this "does not support the whole of [her] subjective reporting being rejected as not credible." ECF #17, p. 12.  But this was not the only reason the ALJ gave for discounting her credibility, and as noted above the ALJ may consider ordinary techniques of credibility evaluation generally as well, which she properly did here.

ORDER - 13